IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.

MICHAEL ANDREW COOK,

Defendant.

Criminal No. 2:24-cr-106

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS**

The United States of America, represented by Erik S. Siebert, United States Attorney, and Jeremy W. McKinnon, Special Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. §3553(a). The government has reviewed the presentence investigation report (PSR) prepared by the United States Probation Office and has no objections to the PSR. Based on the nature of the offense, the defendant's characteristics, and in accordance with the plea agreement (ECF 19), the United States requests the court impose a sentence of one-hundred and twenty (120) months imprisonment. This is sufficient, but not greater than necessary, to comply with the goals set forth in 18 U.S.C. §3553(a).

**I.  ACCEPTANCE OF RESPONSIBILITY**

Because of Michael Andrew Cook's (the defendant) timely plea, a motion to reduce the offense level an additional one point under U.S.S.G. §3E1.1 is appropriate and has been applied here in accordance with the plea agreement. ECF 19.

## II.     PROCEDURAL BACKGROUND

On September 25, 2024, a Grand Jury seated in the Eastern District of Virginia, returned a one count indictment against the defendant. ECF 1. The defendant was taken into federal custody by order of the court on October 4, 2024. ECF 5. On November 21, 2024, the defendant pled guilty to count one of the indictment, violation of 18 U.S.C. 2422(b) Coercion and Enticement of a Minor. ECF 19.

## III.     FACTUAL BACKGROUND

On July 12, 2024, the defendant, text messaged "Step out. 2 minutes away." to who he believed was a fourteen (14) year old girl that he had been communicating with since April 28, 2024. PSR §§ 10(18), 10(20). After travelling from Virginia Beach, Virginia, to a target location in Hampton, Virginia, the defendant was arrested upon his arrival at the destination. PSR §§ 10(18), 10(20). Upon search of the defendant's vehicle, it was found that he brought sexual toys known as "butt plugs" (used for anal insertion), a pair of women's underwear in a plastic bag, and human collars used in sexual dominance fetishes. PSR § 10(19). The fourteen (14) year old girl, that the defendant intended to meet, was a Navy Criminal Investigative Services (NCIS) undercover agent (UC1) that the defendant had been communicating with since April 27, 2024. PSR § 10(1).

On April 27, 2024, UC1, posing as a fourteen (14) year old Navy dependent, posted on "Whisper" (social media application) that she was interested in "men in uniform." PSR § 10(1). The defendant replied to this message, acknowledging their age difference (14 years old to 41 years old) and advising UC1 to keep things rated "PG". PSR § 10(2). He further warned UC1 about other possible users on "Whisper" who might try to take advantage of her because of her

age. PSR § 10(3). UC1 told the defendant that her father was in the Navy, and currently deployed, which the defendant, as an active-duty Navy servicemember, then told UC1 that he was currently on "duty" aboard a Naval ship in Norfolk, Virginia. PSR § 10(4). The defendant continued to communicate with UC1, from April 28, 2024, until July 12, 2024, when he was arrested by Hampton Police Department. PSR §§ 10(7), 38.

Initially communicating through "Whisper", the defendant suggested that they (Defendant and UC1) move the conversation to "Snapchat". PSR § 10(5). UC1 advised that she could communicate through text message, or the social media application "Kik", thereafter the defendant texted UC1 from his cell phone. PSR § 10(6). The defendant also engaged UC1 through telephone calls and requested UC1 to leave voicemails for him. PSR § 10(7).

The defendant told UC1 that he keeps talking to her because he figured she "could use a kind of father figure since [hers] is gone." PSR § 10(8). The defendant then sent UC1 a picture of a bedazzled collar with the words "Daddy's toy", amongst other pictures of collars and leashes, explaining that "a collar denotes that you are someone's", and he's "the kind of guy that like's control." PSR § 10(10). The week before the defendant was arrested, he asked UC1 to leave him a voicemail saying, "goodnight daddy"; two days prior, he instructed UC1 to masturbate and that he would "shove [his] dick down [her] throat" to make her be quiet. PSR §§ 10(12), 10(13). After he was arrested, the defendant stated that he referenced being a father figure because he felt remorse and sympathy for UC1. PSR § 15.

From June 27, 2024, to the date of the defendant's arrest, he engaged in sexually explicit conversation with UC1 through various platforms, also sending UC1 shirtless pictures of himself, requesting pictures in return. PSR §§ 10(9), 13, 16. The defendant would reference UC1 as his "little brat", threatening to "turn her ass red" through spanking, so that he could hear her

"whimper". PSR §§ 10(12), 10(15), 10(17), Further, the defendant would infer his request for oral sex, by stating that he "really just wanted some head" and that he wanted to know "what she tastes like." PSR §§ 10(13, 10(15).

On July 10, 2024, the defendant asked UC1 if she would be around Hampton, Virginia, asking when she got out of summer camp. PSR § 10(17). The defendant offered to pick UC1 up down the street from her house, stating that though he was being "cautious", he was still going to "turn her ass red." *id.*

On July 9, 2024, another NCIS undercover agent (UC2), posing as a fourteen (14) year old girl, posted on "Whisper" that she was "So over my mom's bs." PSR § 21. The defendant messaged UC2, claiming his name to be "Jason". PSR § 21. After acknowledging UC2's age as fourteen (14) years old, the defendant begun to inquire about UC2's hobbies and home life. PSR § 21.

On July 10, 2024, another NCIS undercover agent (UC3), posing as a fourteen (14) year old girl, posted on "Whisper" that "[I don't know] who is hotter sailors or Marines." PSR § 22. The defendant messaged UC3, confirming that she was fourteen years old and stating that she is "off-limits". PSR § 22. The defendant then asked UC3 "How old [is] [she] willing to go?" PSR § 22.

On July 10, 2024, the defendant, and a seventeen (17) year old female, communicated on "Whisper" and by text message. PSR § 12. The messaging included the seventeen-year-old sending the defendant pornographic images, including videos of her genitalia. PSR § 12. The defendant and the seventeen-year-old discussed meeting for sexual activity in exchange for the defendant providing her with money. PSR § 12. On July 11, 2024, the defendant texted the seventeen-year-old, and no further response was received. PSR § 12.

## IV. SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

Under 18 U.S.C. §3553(a), when imposing a sentence, the Court must consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, including: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *18 U.S.C. §3553(a)(2)*. To the extent a District Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 128 S. Ct. at 596).

**A.     Nature and Circumstances of the Offense**

A near three-month workup of texts, chats, phone calls, and voicemails, led the defendant to take meaningful steps to turn his alleged fantasies into reality, that being the sexual domination of a female minor. Arriving at the proverbial doorstep of his intended target, he came supplied

5

with numerous sexual toys, and collars, which by his own words would be used to dominate UC1 and denote that she was his. Further, the continual language used within the conversations, expose the defendant's sexual intrigue with the age differential between the defendant and UC1 (i.e. "little brat", "Daddy's Toy", "Goodnight Daddy" . . .).

The defendant used a common thread, the United States Navy, to engage UC1 in communication. Assuming the position of "White Knight", he built up the trust of UC1 by initially forewarning her of other bad actors on the social media application "Whisper." Prodding into the life details of UC1, at no time was there any question as to the acknowledgment of her minor age, as exemplified in his final travel plans, asking UC1 when she got out of "summer camp" for him to "kidnap" her.

A similar introduction can be seen in the defendant's engagement of UC2 and UC3, who he engaged on the same social media application, while at the same time finalizing his arrangements to physically meet with UC1 on July 12, 2024. With UC2, the defendant begun to prod life details, including hobbies and home life. Also, with UC3, the defendant initially warned her that she was "off-limits" due to her age, however, he near immediately asked how old she was willing to go. However, with UC2, he masked his true name, by disclosing that his name was "Jason."

During the same time, July 9, 2024, to July 12, 2024, the defendant engaged a seventeen (17) year old female on Whisper and by text message. Admitting to such during his post-arrest interview. The conversations with the seventeen (17) year old female included her conveyance of nude images and videos of her genitalia. As stated in the statement of facts, the female stopped texting the defendant, as he posed the last communication.

This offense is not a sole act of bad judgment, but of bad behavior that needs correction.

6

The conduct is prevalent through multiple platforms, and multiple victims, both presented by undercover identities and a minor in actuality. While child exploitation is generally a hidden crime, here, the defendant engaged in sexually explicit conversations in numerous environments and under various contexts.

B.  **Defendant's History and Characteristics**

The government concedes that the defendant assisted with the prosecution of the case, and in no way impeded investigators during or after the arrest.

While he did communicate with UC1 while on duty in his military capacity, his service record is otherwise up to par. However, the government does find that his military service should be viewed in a lesser capacity towards mitigation, due to use of his status as a platform to engage in conversation with minors. Specifically, the commonality with UC1 being a Navy dependent, and further responding to UC2's posting regarding who is hotter, sailors or marines.

C.  **Deter Future Criminal Conduct**

As the defendant's conduct was pervasive throughout so many platforms, and multiple engagements with minors, there is a need for specific deterrence.

General deterrence, relating to the criminal offense of exploiting a minor for sexually explicit ends, weighs heavy on society. Due to the age of minority, and vulnerability, the children have a heightened need for protection in the age of digital communication. The defendant took advantage of the open communication mediums that can connect an adult with a child of any age.

V.  **CONCLUSION**

Based on the above factors, such as the nature and seriousness of the defendant's conduct,

and the need for adequate deterrence – both specific and general – the Government respectfully requests that the Court sentence the defendant to a term of incarceration of one-hundred and twenty (120) months.

Respectfully submitted,

Erik S. Siebert
United States Attorney


By:     /s/
    Jeremy W. McKinnon
    California Bar No. 336424
    Special Assistant United States Attorney
    United States Attorney's Office
    101 W. Main Street, Suite 8000
    Norfolk, Virginia 23510
    Office: 757.441.3040
    Fax: 757.441.6689
    E-mail: jeremy.mckinnon@usdoj.gov