IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:24CR106 |
| ) | |
| MICHAEL ANDREW COOK, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S POSITION ON SENTENCING**

Michael Andrew Cook, by counsel, offers his position with respect to sentencing factors. Mr. Cook has no objections to the presentence investigation report ("PSR").

Mr. Cook requests that this Court adopt the recommendation of the parties as set forth in the written Plea Agreement, ECF No. 19, and impose the mandatory minimum sentence of ten years' incarceration with a term of supervised release to follow.

**Overview of Sentencing Request**

Mr. Cook needs counseling, supervision, and treatment. He respectfully requests the Court impose a sentence of 120 months of incarceration. A ten-year term of imprisonment will accomplish the purposes set forth in 18 U.S.C. § 3553(a) without being "greater than necessary."

**I.     Sentencing Argument**

In determining the appropriate sentence in this case, the Court must consider the factors as set forth in 18 U.S.C. § 3553. The advisory guidelines are but one of the relevant considerations at sentencing. *Gall v. United States*, 552 U.S. 38, 50 (2007). In Mr. Cook's case, the advisory range recommends a sentence of 70-87 months, lower than the mandatory minimum sentence of 120 months.

Mr. Cook's request to impose the statutory minimum sentence of ten years of incarceration followed by a period of supervision is justified by the factors discussed below.

### A. Nature and Circumstances of the Offense

Mr. Cook is before the Court to be sentenced for Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b). He committed the offense over the course of a three-month period in 2024. Mr. Cook has admitted to the facts contained in the PSR and takes full responsibility for his conduct. PSR ¶¶ 10-16 (containing a verbatim recitation of the Statement of Facts and other relevant conduct). When he participated in his PSR interview after admitting his guilt before Magistrate Judge Lawrence Leonard, Mr. Cook again expressed remorse for his actions. PSR ¶ 21. He knows there will be lifelong consequences for his conduct and agrees that serious consequences are appropriate.

When apprehended by law enforcement on July 12, 2024, Mr. Cook waived his rights and admitted to his actions. PSR ¶ 14. Moreover, Mr. Cook agreed to a polygraph, which he passed. PSR ¶ 15. Initially held by the Commonwealth of Virginia, Mr. Cook was transferred into federal custody on October 7, 2024. By sentencing, Mr. Cook will have served approximately 9 months in jail.

### B. Mr. Cook's History and Characteristics

Mr. Cook, just shy of his forty-third birthday, is the only child of Mark and Rose Cook. Mr. Cook's father is retired from the United States Navy, and Rose Cook is retired from the United States Marines. Currently, they live in Beaufort, South Carolina, where they settled after their service. They remain very supportive of Mr. Cook, with full understanding that his actions require consequences.

Because of his military upbringing, Mr. Cook experienced the joy of travel and other cultures from a very early age, living in different parts of the United States, Spain, and Japan. While moving as a child made it difficult to maintain friends, as he got older, he found it easier to adapt to change. Focused on school and religion, Mr. Cook found many peers with whom he could share common experiences, especially when he attended military-connected schools.

With a love of music, Mr. Cook joined the marching and concert band in middle and high school. Being part of an organized group enhanced his feeling of belonging to something bigger than himself. Mr. Cook remained involved with the marching band even after his graduation, helping coach the students during the summer.

After graduating from high school in the top quarter of his class, Mr. Cook initially attended Newberry College with a plan to major in history. Newberry College is a small private Lutheran college about three hours from Beaufort, South Carolina, with less than 3,000 students. Finding that he was not quite ready for college, Mr. Cook returned home and worked for a few years at a pizza restaurant. He later enrolled at the University of South Carolina's Beaufort Campus, maintaining his focus on history, though he did not obtain a degree.

By 2008, Mr. Cook's parents told him to either continue pursuing his education or join the military. So, at the age of 26, Mr. Cook joined the United States Navy. As evidenced by the commendations he has received and the amount of schooling he pursued during his service, the military has provided Mr. Cook a community in which he thrived.

Mr. Cook first met Mallory Lee while working in Beaufort before joining the Navy. He rekindled their friendship when he returned home for visits and kept in touch through social media contact. With much in common, they became a couple, and in 2013, they married in Virginia

Beach. Since that time, Mr. and Mrs. Cook have welcomed three children – two girls and a boy – into their lives. Mr. Cook tries to talk with his family every day.

Mr. Cook has continued to serve the United States honorably, including four combat deployments. However, Mr. Cook's commitment to his marital oath has wavered. As with any marriage, there have been ups and downs. Understandably, military life is difficult on relationships, and Mr. Cook's offense and incarceration have put even more of a strain on the marriage. No one knows what the future holds, except that the focus for everyone, including Mr. Cook's parents, will remain the welfare of the children.

C. **Need for Sentence Imposed Pursuant to 18 U.S.C. § 3553(a)(2)**

Section 3553(a)(2) requires a sentencing court to impose a sentence that reflects the seriousness of the offense; promotes respect for the law; and provides just punishment, adequate deterrence, and necessary training.

1. Seriousness of the Offense; Respect for the Law; Just Punishment

Mr. Cook has expressed remorse and accepted responsibility for his criminal conduct. He has not only "clearly demonstrated acceptance of responsibility for the offense," but he was immediately cooperative with investigating agencies. This reflects his respect for the law and his willingness to accept the consequences of his actions. He knows this Court will impose a just punishment in the form of at least ten years in prison, as the law requires.

Except for this offense, Mr. Cook has been a law-abiding citizen. He has a criminal history score of zero, which yields a criminal history category of I. He has been compliant with authority, and he is fully capable of living a productive life in the future with little to no risk of reoffend. This conclusion is further supported by his work history and his honorable service to the United States of America as a member of the United States Navy. The offense and his impending term of

imprisonment have turned his life upside down. He is aware of the harm he has caused his family and society in general, and it weighs on him constantly. A ten-year term of imprisonment, which is a lengthy sentence for anyone and especially someone like Mr. Cook who has never been to prison, is more than sufficient to promote respect for the law and justly punish Mr. Cook. It also adequately reflects the seriousness of his offense conduct.

2. Adequate Deterrence; Training and Rehabilitation

The requested sentence of ten years will provide adequate deterrence, especially considering Mr. Cook's low risk of recidivism. There are several factors supporting the conclusion that he presents a low risk: his general compliance with the law, his age upon release, and his desire and ability to participate in rehabilitative programming and treatment. This is further supported by the findings of Dr. Shauna Keller, whose report is submitted under seal and incorporated by this reference. *See* Exh. 1, Keller Report.

Furthermore, the fact that Mr. Cook has no criminal history points indicates he presents a substantially reduced risk of recidivism. *See* United States Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders*, at 14 (March 2017) ("Overall, an offender's total criminal history score is a strong predictor of recidivism. Rearrest rates range from a low of 30.2 percent of offenders with zero criminal history points to a high of 85.7 percent for offenders with 15 or more criminal history points."). In addition, his recidivism risk is further ameliorated because of his healthy support network and supportive family. For these reasons, the requested term of incarceration is more than adequate to provide deterrence and achieve the other goals set forth in 18 U.S.C. § 3553(a)(2).

Lastly, scholarly literature and research on deterrence further support the requested sentence of ten years. Research indicates that increases in the *severity* of punishment are far less

important to producing deterrent effects than the *certainty* of punishment (if severity is relevant at all). *See* Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 1. Indeed, "[t]he findings regarding general deterrence are relatively settled":

> The existing data show that in the absence of the threat of punishment for criminal conduct, the social fabric of society would readily dissipate; crime would escalate and overwhelmingly frustrate the capacity of people to lead happy and fulfilled lives. Thus, general deterrence works in the absolute sense: there is *a connection* between criminal sanctions and criminal conduct. However, there is insufficient evidence to support a direct correlation between higher penalties and a reduction in the crime rate.… It is counter-intuitive to suggest that higher penalties will not reduce the crime rate. However, the evidence is relatively definitive.

Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014) (footnotes omitted). In alignment with the scholarly consensus that "awareness of potentially severe sanctions does not produce less crime[,]" *id.* at 1203, a sentence beyond the mandatory minimum in this case is not necessary to achieve deterrence.

   3. Collateral Consequences

Mr. Cook will experience several collateral consequences as a result of his conviction. The stigma of a felony conviction – and particularly a conviction for a sex offense – is more intrusive and pervasive today than ever before due to the availability of information on the internet. *See generally* Wayne A. Logan, *Informal Collateral Consequences*, 88 Washington L. Rev. 1103 (2013) ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave.").

He will be branded publicly as a sex offender – a status that will place him at the margins of society for the rest of his life. *See Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of

a [person] as a sex offender."); *see also Smith v. Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., *dissenting*) (describing the "profound humiliation and community-wide ostracism" that attends sex offender community notification). The First Circuit, in *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012), aptly noted that "[s]ometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed."

Mr. Cook will suffer the consequences of this conviction for the rest of his life, no matter the term of incarceration he serves. *See e.g., United States v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004) ("[T]here is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement…."). His offense of conviction carries an inescapable stigma. *See, e.g., United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming on plain error review district court's finding that the collateral consequences of defendant's child pornography conviction should factor into its analysis of what constitutes "just punishment," including "the interruption of defendant's education and employment, the dissolution of his engagement, *and the stigma attached to this specific offense*.") (emphasis added).

Mr. Cook will also be subject to a registration requirement, which is a particularly oppressive collateral consequence. No matter where he lives or works, the Sex Offender

Notification Act ("SORNA") will remain in place past any time of supervised release and well past the time the sentencing factors are satisfied.

Finally, after 16 years in the military, Mr. Cook's career will end. Mr. Cook served his country honorably since 2008, following the example his parents set. But now, the only question that remains is what type of discharge he will receive. Courts have found collateral consequences like the loss of a career to be highly mitigating. *See e.g., United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (affirming below guideline sentence for child pornography defendant based in part on fact that defendant "lost his teaching certificate and state pension as a result of his conduct. Consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'") (citing 18 U.S.C. § 3553(a)(2)(A) & (B)); *United States v. Samaras*, 390 F. Supp. 2d 805 (E.D. Wis. 2005) (imposing below guideline sentence, in part, because "as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not supported by the guidelines"); *United States v. Stone*, 374 F. Supp. 2d 983 (D.N.M. 2005) (imposing below-guideline sentence on defendant convicted of aggravated sexual abuse, in part because defendant "suffered a lot as a result of his crime," including being terminated from his job and divorced by his wife; the sentence of incarceration, "coupled with Stone's personal losses, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment"); *see also United States v. Wachowiak*, 412 F. Supp. 2d 958 (E.D. Wis. 2006) (noting that "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction," which included that "he was compelled to resign as piano teacher of children and as a church musician" and that "[h[is future career as a teacher was ruined").

## **CONCLUSION**

For the foregoing reasons, Mr. Cook respectfully requests a sentence of one hundred twenty (120) months of incarceration, as such a sentence would be sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

MICHAEL ANDREW COOK

By: _____/s/_____
        Suzanne V. Suher Katchmar
        Virginia State Bar No. 37387
        Attorney for Michael Andrew Cook
        Assistant Federal Public Defender
        Office of the Federal Public Defender
        500 East Main Street, Suite 500
        Norfolk, Virginia 23510
        Telephone: (757) 457-0890
        Facsimile: (757) 457-0880
        suzanne_katchmar@fd.org

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on the 4th day of April 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

     Jeremy W. McKinnon
     Special Assistant United States Attorney
     Office of the United States Attorney
     101 West Main Street, Suite 8000
     Norfolk, Virgina 23510

     I FURTHER CERTIFY that I will send by electronic mail the foregoing document to the following non-filing user:

     Latriston L. Cox
     United States Probation Officer
     United States Probation Office
     600 Granby Street, Suite 230
     Norfolk, Virginia 23510

     /s/
     Suzanne V. Suher Katchmar
     Virginia State Bar No. 37387
     Attorney for Michael Andrew Cook
     Assistant Federal Public Defender
     Office of the Federal Public Defender
     150 Boush Street, Suite 403
     Norfolk, Virginia 23510
     Telephone: (757) 457-089
     Facsimile: (757) 457-0880
     suzanne_katchmar@fd.org